### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**IN RE ELIJAH AND MARY**
**STINY TRUSTS**                                          **No. 3:19-cv-346-DPM**

### AMENDED ORDER

1.   Elijah G. Stiny and Mary Moore Stiny had each been married before and had children from those marriages.  He was much older and much wealthier when they married.   In 2000, as part of a comprehensive estate plan, they created a trust.  Mr. Stiny's long-time lawyer prepared the instrument.   The main trust assets were two apartment complexes in Burbank, California.  Mr. Stiny owned and maintained these assets for years.  They were worth many millions of dollars.  In broad strokes, the trust was to provide for Mr. and Mrs. Stiny, and then the surviving spouse, eventually with sub-trusts for tax reasons, with the corpus being divided equally between Mr. Stiny's family members (the Stiny Share) and Mrs. Stiny's family members (the Moore share) after both had died.  With the help of Mr. Stiny's lawyer, the Stinys amended their trust three times in the following eight years, mostly to change the distribution particulars within the Stiny share and the Moore share.  Elijah Nicholas Stiny is Mr. Stiny's only son.  Over time, his potential share was reduced from 15% of the Stiny half of the corpus to a straight $25,000.

Mr. Stiny died in October 2010.  Mrs. Stiny fell out with Mr. Stiny's long-time lawyer over trust-related issues and hired new counsel.  That new lawyer (Robert Smith) began trust administration, including sending various notices to beneficiaries between March and October of 2011.

Mrs. Stiny's handling of trust-related issues was, at best, lax.  At some point after Mr. Stiny died, she moved to Arkansas, her home state.  She involved her daughter, Rena Wood, in managing the apartments and the trusts.  Mrs. Stiny became mentally incompetent in late 2015.  There was protracted litigation in this Court about Wood's handling of the trust and her mother's affairs.  *Centennial Bank v. Wood*, No. 3:17-cv-226-DPM (E.D. Ark.);  *In re Guardianship of Mary Moore Stiny*, 3:17-cv-227-DPM (E.D. Ark.).  This Court eventually appointed G.S. Brant Perkins to serve as co-trustee with Wood.  Mrs. Stiny died in June 2019.  Then, in early 2021, Wood died in a car accident.  With this Court's approval, the apartment complexes were sold.  The trust now contains approximately twenty-two million dollars.  These are the background facts, which are undisputed.

The current litigation has two layers.  First, Elijah Nicholas Stiny challenges the formation of the trust, mainly arguing undue influence.  To avoid confusion, the Court will call him ENS.  He claims that Mrs. Stiny took advantage of his father, pushing ENS and his sister out of their roles helping manage the apartments and other family

investments.  She limited contact between Mr. Stiny and his children.
Over time, ENS says, Mrs. Stiny bent the aging Mr. Stiny to her will,
including favoring her family in many ways.  Second, there are
construction and administration issues.  The trustee asks the Court to
construe the trust so that he can distribute the corpus.  Two of Wood's
three daughters ask the Court for a particular construction of the
provision about their mother's share.  Members of Mrs. Stiny's
extended family ask the Court to construe the trust such that they will
benefit from the share designated for Mrs. Stiny's mother, who
predeceased her.  And various Stiny grandchildren challenge the
administration of the trust by Mrs. Stiny, Wood, and Perkins, arguing
defects and shortcomings.  The Court scheduled phased trials, with the
trust contest first.

Perkins (now sole trustee), Beauchamp (the personal
representative of Wood's estate), and Woods' daughters moved for
summary judgment on ENS's petition contesting the trust.  They
argued that it was untimely under California law, which everyone
agrees governs.  With an inapplicable wrinkle, a beneficiary has 120
days after service of notice that trust administration has begun to file a
trust contest.  CAL. PROB. CODE § 16061.8.  The movants rely on the
notices sent in 2011 after Mr. Stiny died.  ENS responds that questions
of fact for trial exist about whether he received proper notice.  The deep
issue is whether CAL. PROB. CODE § 16061.7's notice requirements are

satisfied when a trustee mails notice to a beneficiary's post office box. The Court canceled the trial in the trust contest, indicating that it intended to grant the motion for summary judgment and that an explanatory Order would follow. *Doc. 205*. This is that Order.

    **2.** On the undisputed material facts of record, there is no issue for trial about notice. *Oglesby v. Lesan*, 929 F.3d 526, 532 (8th Cir. 2019). Under California law, a trustee must serve notice on each beneficiary when administration of an irrevocable trust begins. CAL. PROB. CODE § 16061.7(a)(2) & (b). Administration of the Stiny trust began at Mr. Stiny's death in 2010 because the trust became irrevocable at that point. *Doc. 186–1 at 15*; CAL. PROB. CODE § 16061.7(a)(1). "The notification by trustee shall be served by any of the methods described in Section 1215 to the last known address[]" of each beneficiary. CAL. PROB. CODE § 16061.7(e). The embedded statute authorizes service by various methods including mail. For a beneficiary at an address in the United States, the mail must be:

- Sent first class;
- By U.S. mail, in a sealed envelope with postage paid; and
- "[T]he notice or other paper shall be addressed to [the beneficiary] at the person's place of business or place of residence."

CAL. PROB. CODE § 1215(a)(1)(A), (a)(2) & (a)(3).  Depositing the notice in the mail completes delivery, CAL. PROB. CODE § 1215(a)(4), and starts the 120-day clock for any trust contest.  CAL. PROB. CODE § 16061.8.

Smith (Mrs. Stiny's new lawyer) handled the notices sent about the Stiny trust with help from his wife, who was his secretary.  The parties deposed Smith.  He testified that his wife mailed the notice required under CAL. PROB. CODE § 16061.7(a) to each trust beneficiary by first class mail in March 2011.  Mrs. Stiny provided the addresses. He sent ENS's notice to Post Office Box 4382, Palm Springs, CA 92263. Though § 16061.7 doesn't require proof of service of the notice, Smith prepared and filed a proof.  It is in the record.  *Doc. 186–5.*  No question is raised about the substance of the notices or their adequacy.

In July 2011, Smith filed a petition for an order dividing the trust into two or more separate trusts in the California Superior Court for Los Angeles County.  *Doc. 186–6.*  The petition contained a list of the names and addresses of the residual beneficiaries who were to receive notice of the proceedings.  *Doc. 186–6 at 4–6.*  Smith testified in his deposition that he sent multiple notices to these beneficiaries throughout the trust division proceeding.  And proof of service of a hearing notice dated 29 August 2011 is in the record, too.  *Doc. 186–7.* All these notices were sent to ENS at Post Office Box 4382, Palm Springs, CA 92263.  Smith testified that none of the § 16061.7 notices sent in March 2011, or notices sent in the 2011 trust division

proceedings, were returned as undeliverable.  Smith retained his file, and it contained no indication of any mailing problem.

ENS does not argue that he did not receive the notices.  He does not argue that the Palm Springs post office box was an incorrect address for him in March or August 2011.  There is no evidence of record that Mrs. Stiny or Smith had any other address for ENS.  Patricia Sorley, ENS's sister, was deposed.  She offered supportive testimony about Mrs. Stiny's alleged undue influence over Mr. Stiny.  But neither she nor anyone else has provided any testimony or evidence that the address Smith used for ENS was incorrect.  ENS was not deposed and has not testified by affidavit.  The record indicates that ENS has wrestled with health challenges, physical and mental, through the years.  He is currently residing in some kind of institution, though the Court does not know the particulars.  No record evidence indicates, and no argument is made, however, that ENS's health challenges affected his ability to act on the notices sent in 2011.

ENS argues that mailing notice to a post office box does not satisfy § 1215(a)(3)'s address criteria:  a box, he says, is neither a place of business nor a place of residence.  This argument has textual force.  The movants respond that the whole point of the statute is to maximize the chances of actual notice.  And if a post office box is the last known address of a beneficiary, mailing notice there is acceptable and sufficient.  This is an undecided question of California law.  (There are

some unpublished opinions from intermediate appellate courts, but they cannot be cited or relied upon.  CAL. R. CT. 8.1115(a)).  This Court must therefore make an *Erie*-educated prediction about how the California Supreme Court would answer the question.  *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).

This Court predicts that a post office box would qualify as a place of residence for purposes of CAL. PROB. CODE § 1215 and § 16061.7.  First, in a dispute about actual notice, the unquestioned premise of the decision was that a box qualified as a place of business under § 1215.  *Gertner v. Superior Court*, 20 Cal. App. 4th 927, 931–32 (1993).  Second, California law authorizes service of process at a box.  *TransAmerica Title Insurance Co. v. Hendrix*, 34 Cal. App. 4th 740, 745–46 (1995) (a post office box is a sufficient address for service under CAL. CIV. PROC. CODE § 415.30 where it's the address most likely to provide actual notice); *see also Buckelew v. Gore*, 2020 WL 4188166, at *5 (S.D. Cal. 21 July 2020) (mailing process to the post office box of the defendant's place of employment is sufficient service by mail under CAL. CIV. PROC. CODE § 415.30).  Third, California applies a substantial compliance standard on service-related issues.  *Buckelew*, 2020 WL 4188166, at *4.  People prefer to get their mail at the post office for various reasons.  The point of these statutes, as the movants say, is to insure, insofar as practicable, actual notice.  ENS's reading of § 16061.7 and § 1215 would eliminate the mail as a vehicle for service of notice where a beneficiary's last

known address is a post office box.  And that result runs aground on the holdings and tenor of the California precedent about notice and service.

Smith got one response after he mailed the notices to the Stiny trust residual beneficiaries.  He testified that he had a distinct memory of it.  He got a telephone call from a man who said he was Mr. Stiny's son.  Of course Smith could not be certain if this person was ENS.  The caller asked for a picture owned by his father, a picture of a boat.  Smith described the caller as "emotional and weepy," with a lot of personal information about Mr. Stiny.  And the caller told Smith exactly where to find the picture of the boat.  *Doc. 186–8 at 15 & 31*.

The trustee's notices to ENS by first class mail to Post Office Box 4382 in Palm Springs satisfied CAL. PROB. CODE § 16061.7(e) and § 1215.  A reasonable fact finder could reach only one conclusion on the record presented:   ENS received notice that trust administration began in March 2011 and notice that trust administration was ongoing during the next several months.  ENS's November 2020 trust contest, which was filed some nine years later, was therefore untimely.  CAL. PROB. CODE § 16061.8.

\* \* \*

The joint motion for summary judgment, *Doc. 186*, is granted.  Elijah Nicholas Stiny's amended petition is dismissed with prejudice.

So Ordered.

_WPMarshall Jr._
D.P. Marshall Jr.
United States District Judge

_16 June 2022_